IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:20-cv-00200-MOC-WCM

| | |
|---|---|
| CATHERINE MARIE HEDLUND, ) ) Plaintiff, ) ) v. ) ) COMMISSIONER OF THE SOCIAL ) SECURITY ADMINISTRATION, ) ) Defendant. ) _____ ) | MEMORANDUM AND RECOMMENDATION |

This matter is before the Court on the parties' cross motions for summary judgment (Docs. 11, 13), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

I.  Procedural Background

In July of 2018, Plaintiff Catherine Marie Hedlund ("Plaintiff") filed an application for disability insurance benefits, alleging disability beginning August 4, 2017. Transcript of the Administrative Record ("AR") 206-212.

On July 16, 2020, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued an unfavorable decision. AR 11-30. That decision is the Commissioner's final decision for purposes of this action.

1

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "degenerative disc disease of the cervical spine; bipolar disorder, and anxiety disorder." AR 16. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that, through the date Plaintiff was last insured (December 31, 2019), Plaintiff had the residual functional capacity ("RFC"):

> to perform medium work…except for the following limitations. The claimant could frequently reach overhead bilaterally. Due to moderate limitations in concentration, persistence, or pace, she was limited to understanding, remembering, and carrying out simple, routine and repetitive tasks; she could have no fast-paced production requirements (e.g. assembly line work); she could interact occasionally with supervisors and coworkers, but never interact with the public; and she was able to be exposed to no more than occasional changes in job setting.

AR 18.

Applying this RFC, the ALJ found that Plaintiff had the ability to perform certain jobs that existed in significant numbers in the national economy such that Plaintiff was not disabled during the relevant period. AR 23-25.

2

### III. Plaintiff's Allegations of Error

Plaintiff contends that the ALJ's determination that her mental health symptoms improved with treatment is not supported by substantial evidence, and that the ALJ failed to weigh certain opinion evidence properly.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a

3

federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the Court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that she is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

V. Discussion

### A. Improvement Following Mental Health Treatment

The ALJ concluded that Plaintiff's allegations regarding the limitations caused by her mental health symptoms were not entirely consistent with other evidence in the record. AR at 19-20. Specifically, the ALJ concluded that Plaintiff's mental health improved following her treatment at Daymark Recovery Services, Inc. ("Daymark"). AR at 21. Plaintiff argues that this conclusion is not supported by substantial evidence.

With respect to mental health treatment after August 4, 2017 (Plaintiff's alleged disability onset date), the ALJ noted that Plaintiff sought treatment at Solace Behavioral HealthCare on April 12, 2018, at which time she was diagnosed with generalized anxiety disorder, moderate and recurrent major depressive disorder, and bipolar II disorder. Id. (citing AR 447).

The ALJ additionally acknowledged that in June of 2018, Plaintiff

4

unsuccessfully attempted suicide, "an action she later attributed to an adverse reaction to medications." Id. (citing AR 477 (August 2, 2018 mental health treatment record from Daymark reflecting that Plaintiff "voice[d] some anger associated with…feeling as if she was prescribed the wrong combination of medications and that it led to her recent botched suicide attempt")).

Following that event, Plaintiff sought treatment from Daymark. Id. (citing AR 459-477; AR 643-677). The ALJ noted that in a Clinical Assessment completed at the beginning of that treatment, Plaintiff reported that her moods were "all over the place," that she was anxious, and that she was afraid to take psychotropic medications due to her history of adverse reactions. Id. (citing AR 464). The ALJ further explained that through Daymark, Plaintiff participated in individual and group therapy, and received psychotropic medication management with Dr. Sahri Sengupta. Id.

The ALJ stated that Plaintiff "initially reported some improvement in her symptoms on the medications by November 8, 2018 and has continued to report good response to her treatment at Daymark." Id. (citing AR 647 (November 8, 2018 medical note signed by Dr. Sengupta reflecting that Plaintiff reported that "she is not having any blowouts lately, that she is more even tempered and does not feel impulsive" and that "sleep is pretty good she wakes some at night but overall sleeping okay")).

Plaintiff argues that her improvement in November 2018 was temporary

5

and mild. Specifically, Plaintiff cites progress notes reflecting her frustration and difficulties associated with her living arrangement, as well as her reports of continued anxiety, mood disturbance, and depression. See Doc. 12 at 10 (citing AR 649 (January 3, 2019 progress note reflecting that Plaintiff was frustrated that she and her husband were "having to live with another couple and she always [is] isolating herself in her bedroom"); AR 650 (January 24, 2019 progress note indicating that Plaintiff reported that her roommate threatened to call her probation officer because she and her husband were arguing); AR 653 (March 28, 2019 medical note reflecting Plaintiff's chief complaint as anxiety); AR 666 (October 31, 2019 medical note indicating Plaintiff "would like more help with mood and anxiety" and requested that her Seroquel be increased)).[1]

"[T]he substantial evidence standard 'presupposes…a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" Dunn v. Colvin, 607 Fed. Appx. 264, 274 (4th Cir. 2015) (quoting Clarke v. Bowen, 843

---

[1] Plaintiff also argues that she "was discharged from her primary care physician's office secondary to confrontational behaviors in 2018." Doc. 12 at 11. It appears that she is referencing her treatment with Andrew Pinkerton, a physician's assistant at Boomer Medical Center. See AR 473. However, Mr. Pinkerton's treatment records do not include a notation that the practice refused to continue providing care to her. See AR 634-642 (February 27, 2018 through May 3, 2018 treatment records).

6

F.2d 271, 272-273 (8th Cir. 1988)). At the same time, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017); see also Lockerby v. Saul, No. 1:19-CV-00159-MOC, 2020 WL 506752 at *5 (W.D.N.C. Jan. 30, 2020) ("by failing to address evidence that was inconsistent with his finding of "improvement," the ALJ failed to consider all relevant evidence").

Here, while there are indications in Plaintiff's treatment record that she has suffered significant mental health obstacles (including a failed suicide attempt), other information is consistent with the ALJ's statement that Plaintiff "continued to report good response to her treatment at Daymark." See AR 654 (March 28, 2019 medical note stating Plaintiff did not want to make any changes to her medications, and that she was not experiencing any adverse side effects to same); AR 658 (May 16, 2019 medical note reflecting same); AR 661 (August 8, 2019 medical note reflecting that Plaintiff reported "she is finding the Seroquel during the day helpful, although she previously noted the daytime dose makes her sedated. She states things are going fine but would like to switch back to Lunesta…She is happy with tomamax…"); AR 672 (January 23, 2020 medical note reflecting that Seroquel helps "calm her nerves and provides mood stabilization" and that "overall, she feels she is at baseline

7

and doing okay")).[2]

Accordingly, although the ALJ could have been more explicit in his discussion of how Plaintiff improved after November 2018, it appears that the ALJ did grapple with evidence contrary to his conclusions. See Lantrip v. Berryhill, No. 1:15-CV-00227-RLV, 2017 WL 1179151, at *3 (W.D.N.C. March 28, 2017) ("as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a de novo review of the record").

### B. Consideration of the Opinion Evidence

Plaintiff also argues that the ALJ erred in his consideration of the opinions of Nancy Sizemore, LPA and Dr. Philip Hatfield, PhD, both of whom conducted psychological evaluations of Plaintiff. See AR 491-496 (Ms.

---

[2] Plaintiff points out that in early therapy records from Daymark, she was noted as "quite angry and hostile" in a group therapy setting. Doc. 12 at 10 (citing AR 473). Plaintiff also argues that records prior to the relevant period reflect significant symptoms. Doc. 12 at 11. However, the fact that Plaintiff was experiencing significant mental health challenges prior to or at the beginning of her treatment at Daymark does not contradict the ALJ's conclusion that she improved once receiving treatment at Daymark. Additionally, Plaintiff contends that there is no evidence to support the ALJ's statement that Plaintiff sought treatment at Daymark "possibly to bolster her defense of her legal charges" (stemming from shooting a gun inside a home during her failed suicide attempt). See Doc. 12 at 15; AR 21. The undersigned agrees that the ALJ failed to cite any evidence supporting that statement. However, Plaintiff's possible motivation for seeking treatment does not appear to have been a basis for the ALJ's conclusion that she improved with treatment.

Sizemore's November 12, 2018 evaluation); AR 513-516 (Dr. Hatfield's October 13, 2019 evaluation).

For applications filed on or after March 27, 2017, such as Plaintiff's, the Administration has "fundamentally changed how adjudicators assess opinion evidence." Bright v. Saul, 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020) (citing 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §404.1520c(a) (effective March 27, 2017)). Specifically, "longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating source opinions have changed" and an ALJ is now required to "consider and articulate in the administrative decision how persuasive he or she finds each medical opinion…" Id.

"In evaluating persuasiveness, the ALJ must articulate two factors: supportability and consistency. Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Id. (internal citations omitted).

Here, following a November 12, 2018 psychological evaluation, Ms. Sizemore concluded that Plaintiff would have "problems relating to others including coworkers and supervisors," "may have difficulty understanding and responding to simple instructions when she is having a manic episode," "will

9

have difficulty attending and concentrating enough to perform simple routine tasks," and "will have difficulty tolerating stress in a working environment." AR 495.

Following an October 11, 2019 psychological evaluation, Dr. Hatfield concluded that Plaintiff appeared "generally capable of understanding, retaining and following simple, concrete instructions without difficulties, although [she] will likely experience moderate and episodic difficulties in sustaining attention to perform routine, repetitive tasks," was likely to have "marked difficulties forming and maintaining working relationships with co-workers and supervisors, and the general public," and was "unlikely to tolerate the usual stress and pressures of a competitive workplace without significant difficulties, including managing changes in the routine." AR 516.

The ALJ found both Ms. Sizemore's and Dr. Hatfield's opinions unpersuasive, explaining that these opinions were based on Plaintiff's self-reported symptoms, and that it did not appear that Plaintiff had reported the improvement she had noted to Dr. Sengupta to either Ms. Sizemore or Dr. Hatfield. See AR 23; AR 21 ("The claimant reported her historical symptoms [to Ms. Sizemore], but not that she had recently told Dr. Sengupta that she was doing better since her medication regimen had been reestablished"); AR 22 (explaining that Plaintiff's reports to Dr. Hatfield "did not include any indication of the benefit she reported to her treating psychiatrist").

10

Plaintiff argues that the ALJ erred because both Ms. Sizemore's and Dr. Hatfield's opinions were based on their respective objective observations of Plaintiff (in addition to Plaintiff's self-reports). Doc. 12 at 12-14. Plaintiff also reiterates her position that the records from Plaintiff's treating psychiatrist, Dr. Sengupta, do not support the ALJ's determination that Plaintiff had improved with treatment. Finally, Plaintiff argues that the "consistency of the opinion evidence" supports limitations greater than those included in her RFC. Doc. 12 at 17.

Plaintiff correctly notes that both Ms. Sizemore's and Dr. Hatfield's reports include independent observations made by them regarding Plaintiff's behavior and mental status during their evaluations. See AR 493-495 (Ms. Sizemore's observations and mental status examination of Plaintiff); AR 515-516 (Dr. Sizemore's mental status examination of Plaintiff). However, these reports also appear to be based on Plaintiff's subjective complaints. Specifically, Ms. Sizemore stated, at the beginning of her report, that the information contained therein was "based on self-report by the client and is therefore limited to the claimant's truthfulness and ability to give accurate report and history." AR 491.

In addition, and as discussed above, it appears that substantial evidence supports the ALJ's conclusions regarding Plaintiff's treatment through Daymark. Although both Ms. Sizemore and Dr. Hatfield noted in their

11

evaluations that Plaintiff was receiving treatment at Daymark, they did not discuss those treatment records further, or reference Plaintiff's improvement specifically. See AR 492; AR 513.

Further, in considering the opinion evidence, the ALJ relied on the opinions of the state agency psychological examiners, Dr. Bonny Gregory and Dr. April Strobel-Nuss, Psy.D. See AR 22 (finding Dr. Gregory's opinion "generally persuasive" but finding Plaintiff had a moderate, rather than mild, limitation in her ability to understand, remember, or apply information as "more consistent" with the record as a whole, including the opinion of Dr. Strobel-Nuss).[3]

Significantly, Dr. Gregory found that Plaintiff could understand and remember short and simple instructions, would be able to sustain acceptable pace and quality of performance over two-hour periods of time, could maintain socially appropriate behavior in a setting without excessive demands for interpersonal interaction with the general public, and could adequately cope with and adapt to changes in a low stress work environment. AR 90-92. Dr. Gregory also concluded that Plaintiff had the mental residual functional

---

[3] Dr. Gregory issued her opinion on December 21, 2018, and it appears that she considered Ms. Sizemore's opinion when formulating her own conclusions. See AR 92 & 88. Dr. Strobel-Nuss issued her opinion on October 22, 2019 and considered the opinions of both Ms. Sizemore and Dr. Hatfield. See AR 114 & 110.

capacity to perform simple, routine, repetitive tasks on a sustained basis in a low stress working environment with limited social contact. AR 92.

The limitations included in Plaintiff's RFC appear to be consistent with Dr. Gregory's opinion, and the ALJ's reliance on this opinion when developing Plaintiff's RFC was appropriate. See Norton v. Saul, 1:20-cv-00060-KDB, 2021 WL 861710, at *3 (W.D.N.C. March 8, 2021) ("The ALJ's reliance on the opinion of the state agency medical consultant that [plaintiff] could complete simple tasks even with moderate limitations in CPP satisfies the explanation necessary to support the RFC limitations"); Tanner v. Commissioner of Social Security, 602 Fed. Appx. 95, 101 (4th Cir. 2015) (unpubl.) (while "[a] 'non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted *by all of the other evidence in the record*[,]' 'the testimony of a nonexamining physician can be relied upon when it is consistent with the record.'") (quoting Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) (emphasis in Smith)); see also SSR 96-6p, 1996 WL 374180, at * 2 (July 2, 1996) (state agency consultants "are highly qualified ... physicians and psychologists who are experts in the evaluation of medical issues in disability claims...."); Stamey v. Berryhill, No. 1:18-cv-00062-FDW-DSC, 2019 WL 937331, at *3 (W.D.N.C. Feb. 26, 2019) (citing Settlemyre v. Colvin, No. 5:14–cv–00199–MOC, 2015 WL 5457950, at

*4 (W.D.N.C. Sept. 16, 2015); Linares v. Colvin, No. 5:14-cv-00120, 2015 WL 4389533, at *3 (W.D.N.C. July 17, 2015)).

Ultimately, although Plaintiff disagrees with the ALJ's conclusions and contends she has greater limitations, the Court "is not left to guess" at the foundations for the ALJ's findings or his treatment of the opinions of Ms. Sizemore and Dr. Hatfield. Pegg v. Berryhill, No. 1:16-cv-383-MOC, 2017 WL 3595487, at *3 (W.D.N.C. Aug. 21, 2017); see also Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (in formulating the RFC, the ALJ "must both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion"); Petty v. Saul, No. 1:19-cv-00012-FDW, 2020 WL 1441436, at *4 (W.D.N.C. March 20, 2020) ("The ALJ considered Dr. Ocloo's opinion in light of the rest of the record and decided it warranted 'some' weight. The ALJ provided substantial evidence for her weight determination; therefore, the Court will not disturb the ALJ's decision").

## VI. Recommendation

Considering the foregoing, the undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 11) be **DENIED**, and that the Commissioner's Motion for Summary Judgment (Doc. 13) be **GRANTED**.

Signed: January 6, 2022

W. Carleton Metcalf
United States Magistrate Judge

### Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).